**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE:

WILLIAM C. EARNEST and MARY P. EARNEST                           CASE NO. 11-61579

DEBTORS

MAXIE HIGGASON, TRUSTEE                                          PLAINTIFF

VS.                                                    ADVERSARY CASE NO. 13-6018

CHERYL L. STALEY
WILLIAM C. EARNEST                                               DEFENDANTS

**OPINION**

This matter is before the Court on cross-motions for summary judgment [Docs. 19 and 50] and the related responses and replies] [Docs. 46 and 48]. The fraudulent transfer at issue is the conveyance by the Debtor, William C. Earnest, of a mortgage lien on his interest in a house and tract of land in Oregon to his sister, Cheryl L. Staley ("Staley"). The Chapter 7 Trustee alleges actual and constructive fraud in the transfer under 11 U.S.C. § 548(a)(1).

There are no disputed issues of fact that warrant further action. Summary judgment is granted in favor of the Debtor on all counts and in favor of Staley on the constructive fraud count. Summary judgment is denied as to the actual fraud count.

I. **FACTS**.

   **A. The Oregon Property and Subsequent Litigation.**

The Debtor listed the following asset on his Schedule A: "1/3rd interest subject to survivorship to survivor in 80 acres & house in Oregon where sister Valerie lives/ will surrender (total value of land & house now is $300,000 at most)–ownership is subject of pending lawsuit in

Oregon/ will surrender." [Case No. 11-61579, Doc. 1] The Debtor, along with Staley and their brother, Michael Earnest, each received a life interest in the Oregon land and house from their mother in 1980. Doc. 1, Ex. B. Staley conveyed her interest to her younger sister, Valerie, in 1982. Doc. 19, Ex. B at 2.

In September 2004, the Debtor's mother died, survived by the Debtor's father and her children. *Id.* at 2. In her will, the Debtor's mother asked her children to let their father continue to live on the Oregon property. *Id.* at 2–3. Michael, however, transferred his interest to a third party, Paul Arritola, after the Debtor and Valerie refused to sell the property. *Id*. at 3. The Debtor's father rejected Arritola's demands that he vacate the property and the Debtor's father, Valerie and the Debtor sued Arritola in October 2005 to set aside Michael's deed to Arritola or, in the alternative, to create a constructive trust for the father. Doc. 20, Ex. 2.

### B. The 2004 Agreements.

The Debtor created and marketed an electrical conduit repair kit that he claims became a successful business by 2004. Doc. 47 at 52. The Debtor's next design project was a mechanism that would separate oil from water in oil spills. *Id.* at 53. Staley provided $350,000 to the Debtor to fund the separator project on or about September 15, 2004. *Id.* at 54; *see also* Doc. 19, Ex. D.

The Debtor and Staley documented the transfer of the funds with forms they found on the Internet. Doc. 19, Ex. B at 2; Doc. 25 at 2. The documents signed by the Debtor and Staley include (the "2004 Agreements"):

- Promissory Note dated September 15, 2004, made by the Debtor payable to Staley (the "Note"), which was executed by the Debtor, as Borrower, Staley, as Loaner, Phyllis Earnest, as a witness, Terry Staley, as a witness, Valerie Vickery, as land owner, and Tyler Vickery, as a witness; [Doc. 19, Ex. D at 1]
- Document attached to Promissory Note dated September 15, 2004 (referred to by the parties and herein as the "Codicil"), which was initialed by the same parties as the

>     Note; [Doc. 19, Ex. D at 2]
> - Quitclaim Deed dated September 15, 2004 (the "Quitclaim Deed"), granted by the Debtor to Staley, which was executed by the Debtor and two witnesses, but not notarized; [Doc. 19, Ex. E] and
> - Agreement dated September 15, 2004, wherein the Debtor agrees to sell, and Staley agrees to purchase, the Oregon property (the "Sale Agreement"), which was executed by the Debtor and Staley.  [Doc. 19, Ex. F].

### C.  Grant of the Mortgage.

On May 7, 2010, the Debtor executed a Mortgage, Deed of Trust or Security Deed dated September 15, 2004, granting a lien on his interest in the Oregon property in favor of Staley to secure repayment of the Note (the "Mortgage").  Doc. 1, Ex. A.  The Mortgage was recorded in the local property records on July 23, 2010.  The Note recognized the possibility of the execution of the Mortgage in Section C: "We all agree that if I should default on the Interest payments to Cheryl Staley, that I will fill out and sign a Mortgage Deed of trust to Cheryl Staley."  Doc. 19, Ex. D (capitalization in original).  The Debtor and Staley both indicated the Mortgage was executed and recorded in 2010 so Staley could participate in the Arritola litigation in Oregon.  Doc. 25 at 3; Doc. 47 at 68-69.

### D.  The Debtor's Financial Issues and Bankruptcy.

In 2007, the Debtor's partners in the repair kit business sued the Debtor in Florida for control of the company, Extruded Pipe Repair Company of Massachusetts.  Doc. 19-1 at 4.  The litigation was moved to Massachusetts and was still pending when the Mortgage was granted.  Doc. 47 at 57.  On December 29, 2010, the Massachusetts court rendered partial judgments in favor of multiple plaintiffs against the Debtor totaling $1,637,421.58.  Doc. 47, Ex. G.

The Debtor testified in his deposition that, until the judgments were rendered, he believed he would not only win the lawsuit, but also succeed on his counterclaims equal in value to the claims against him.  *Id*. at 57.  On March 30, 2010, five weeks before the Mortgage was

executed, the Debtor's lawyer withdrew[1] and the Debtor appeared pro se thereafter. *Id.*, Ex. F at 8. Between June and August of 2010, the Debtor failed to respond to multiple motions to compel and multiple motions for sanctions, all of which were granted. *Id.* at 9–10.

On November 18, 2011, the Debtor filed his Chapter 7 bankruptcy petition. Schedule D lists the Note as a secured obligation and both Schedule A and Schedule D indicate the secured value of Staley's Note is $100,000. [Case no. 11-61579, Doc. 1.] On May 31, 2013, the Trustee brought this adversary proceeding seeking to avoid and preserve the Mortgage as an actual and constructively fraudulent transfer under §§ 548 and 550. Doc. 1. The parties then filed their requests for summary judgment, a hearing was held and this matter is now submitted for decision.

## II. ANALYSIS

### A. Jurisdiction and Summary Judgment Standard.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56 in adversary proceedings). The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).

---

[1] The Debtor's schedules include $150,000 in unpaid attorney's fees arising out of the lawsuit, although the record does not indicate the lack of payment was the reason for the withdrawal. Doc. 1 in main case at 22–23; Doc. 47 at 47–48.

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In a § 548 action, the plaintiff bears the burden of proving each element of a fraudulent transfer by a preponderance of the evidence. *In re Humble*, 19 F. App'x. 198, 200 (6th Cir. 2001); *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134 (Bankr. E.D. Ky. 2004). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"[W]here the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

**B.  There Is No Claim Under §§ 548 and 550 Against the Transferor.**

The Trustee sued the Debtor and Staley to avoid the transfer of the Mortgage and recover the transfer for the benefit of the estate. There is, however, no cause of action under § 548 against the Debtor as the transferor of the Property. Section 548 provides that the Trustee may

avoid the transfer, which necessarily contemplates an action against the transferee of the Debtor's interest in property. There is nothing to avoid on the part of the Debtor as transferor.

There is likewise nothing the Trustee can accomplish by pursuing the Debtor under § 550. Section 550 provides that the Trustee may recover an avoided transfer for the benefit of the Debtor's estate. But § 550, titled "Liability of transferee of avoided transfer," only provides for recovery from initial and mediate transferees. 11 U.S.C. § 550(a); *see also Davis v. Davenport (In re Davenport)*, 147 B.R. 172, 186 (Bankr. E.D. Mo. 1992) ("The language of Section 550(a) does not empower a court to enter judgment against the transferor of property that was the subject matter of a transfer that the trustee later avoids.").

Therefore, the Trustee has no cause of action against the Debtor under §§ 548 and 550.

C. **The Transfer of the Mortgage Was Not Constructively Fraudulent.**

The Trustee claims that the grant of the Mortgage was constructively fraudulent. A constructively fraudulent transfer requires a transfer of the Debtor's interest in property within two years of the petition date for less than reasonably equivalent value while the Debtor was suffering one of the financial conditions described in the statute. *See* 11 U.S.C. § 548(a)(1)(B). Each of the four elements must apply for the Trustee to succeed. The first two criteria, transfer of an interest in property within two years of the petition date, are satisfied. If the Debtor received reasonably equivalent value for the transfer, there is no need to address the Debtor's financial condition.[2] *See In re Chomakos*, 69 F.3d 769 (6th Cir. 1995).

The Trustee argues that the Debtor did not receive reasonably equivalent value for his mortgage to Staley because the Debtor did not receive contemporaneous value for his mortgage. *See* Doc. 50-1 at 4. This argument fails because the Debtor received value for the grant of the

---

[2] The opposite is also true, but addressing the Debtor's financial condition is usually more fact-intensive and may not allow a grant of summary judgment.

Mortgage.

Section 548 defines the term "value" to mean "property, or satisfaction or securing of a present or antecedent debt of the debtor, but . . . not . . . an unperformed promise to furnish support to the debtor or to a relative of the debtor … ." 11 U.S.C. § 548(d)(2)(A). Under § 548's plain terms, "[a] debtor receives value simply by securing a debt." *Anand v. Nat'l Republic Bank of Chicago (In re Anand)*, 239 B.R. 511, 517 (N.D. Ill. 1999). The fact that the Mortgage was granted to secure a Note made in 2004 does not change the analysis. *See, e.g., Callahan v. Osteen (In re Osteen)*, No. 3:12-cv-00023, 2012 WL 5194251 (W.D. Va. Oct. 19, 2012); *Geron v. Palladin Overseas Fund, Ltd., et al. (In re AppliedTheory Corp.)*, 323 B.R. 838, 841-42 (Bankr. S.D.N.Y. 2005) aff'd, 330 B.R. 362 (S.D.N.Y. 2005); *In re Anand, supra*.

As one court put it: "Past consideration is good consideration. An 'antecedent debt' satisfies the requirement of fair consideration and reasonably equivalent value." *Pereira v. Dow Chemical Co. (In re Trace Intern. Holdings, Inc.)*, 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003), *vacated on other grounds*, No. 04 Civ. 1295, 2009 WL 1810112 (S.D.N.Y. June 25, 2009). Further, courts have held that mortgages given long after the loans they secured were made were given for consideration. *See, e.g., Pfeifer v. Hudson Valley Bank, N.A. (In re Pfeifer)*, Bankr. Case No. 12-13852, Adv. No. 13-1320, 2013 WL 3828509 (Bankr. S.D.N.Y. Jul. 23, 2013) (five years); *In re Osteen, supra* (three years).

The Debtor's mortgage to Staley recited that it was made in consideration of Staley's 2004 loan to the Debtor. Doc. 1, Ex. A. The Trustee does not dispute that the Debtor actually received the loan proceeds or that the debt remained unpaid.[3] *See Stillwater Nat'l Bank and Trust Co. v. Kirtley (In re Solomon)*, 299 B.R. 626, 637 (B.A.P. 10th Cir. 2003) (holding that

---

[3] The Debtor had only paid Staley $5000 related to the Note. Doc. 19-1 at 21.

antecedent debt does not constitute reasonably equivalent value where the "debtor received no loan proceeds from the antecedent debt."). Therefore, the Debtor received reasonably equivalent value for the transfer.

The Trustee cannot prove the Debtor did not receive reasonably equivalent value, so there is no constructive fraud under § 548(A)(1)(B).

### D. Issues of Fact Remain Regarding the Actual Fraud Claim.

The Trustee also argues that the grant of the Mortgage was actually fraudulent. Actual fraud requires proof the Mortgage was granted "with the actual intent to hinder, delay, or defraud" creditors. *See* 11 U.S.C. § 548(a)(1)(A). Incidentally hindering or delaying creditors does not suffice. In this case, therefore, the Trustee must prove that there was no real intent by the Debtor to create a security interest that Staley would ever enforce, and that the Mortgage is simply a device to shield the Debtor's life estate from other creditors.

The Trustee has no direct evidence to support his position. Instead, he relies on badges of fraud to sustain his burden of proof. Plaintiffs often rely on badges of fraud to support the intent component of a fraud claim. *See Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 414 (6th Cir. 2005) ("Badges of fraud are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.") (internal quotation marks omitted) (citation omitted); *see also Soza v. Hill*, 542 F.3d 1060, 1067 (5th Cir. 2008) (reciting six classic badges of fraud). As one court explained, "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, *i.e.*, circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv.*

*Fund Ltd.)*, 397 B.R. 1, 10 n.13 (S.D.N.Y. 2007) (*quoting Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005)).

The Trustee cites five badges of fraud to support his position, but presents argument and evidence in support of only two badges. First, the Trustee argues that a transfer to a family member suggests fraudulent intent. Second, the Trustee raises timing as a badge of fraud because the Debtor and Staley executed the Mortgage while the Debtor's business was failing and litigation was ongoing.

The family relationship alone is unconvincing as a badge of fraud in this case. The Mortgage arose out of agreements made in 2004, well before any financial troubles developed. *See Farmer's Bank of Fountain Run v. Hagan*, 46 S.W.2d 1084, 1087 (Ky. 1932) (conveyance of a security interest between spouses is recognized absent fraud). Further, Staley claims that the transfer in 2010 is explained by her need to obtain standing to participate in the Oregon litigation.

The timing of the grant of the Mortgage is more problematic. The Debtor testified in his deposition that he was optimistic about winning the Massachusetts lawsuit at the time of the transfer and that, at the time, he was able to pay his debts. Doc. 47 at 62. This testimony is contradicted, however, by the facts. The Debtor's attorney in the Massachusetts litigation had withdrawn from representation of the Debtor five weeks before the grant of the Mortgage and the Debtor did not actively participate thereafter. *See supra* at Section I.D. Further, the Debtor's testimony that he was able to pay his bills at the time of the transfer is belied by the $150,000.00 obligation to his attorneys.

While the Debtor and Staley offer a potentially legitimate reason for timing of the Mortgage, the summary judgment standard requires that the Court construe the facts in the light

most favorable to the Trustee. A recent decision from the United States District Court for the Eastern District of Kentucky addressed the Kentucky fraudulent conveyance statute in the context of a summary judgment request. *Jadco Enter. v. Fannon, et al.*, Case No. 6:12-225-DCR, 2014 WL 66521 (E.D. Ky. Jan. 8, 2014). The court did not decide *Jadco* under § 548(a)(1)(A), but the rationale against granting summary judgment on facts similar to this case is persuasive.

The Trustee's badges of fraud are minimal, but they are sufficient to survive Staley's request for summary judgment. They are not sufficient to justify summary judgment in favor of the Trustee.

### III. CONCLUSION.

Summary judgment is granted to the Debtor as there is no right of recovery under §§ 548 or 550 against the transferor of a fraudulent conveyance. Summary judgment is granted in favor of Staley on the constructive fraud count under § 548(a)(1)(B). The Debtor received reasonably equivalent value for the transfer based on his antecedent debt. Summary judgment in favor of either party is denied on the actual fraud claim under § 548(a)(1)(A) because genuine disputes of fact remain. A separate order consistent with this Opinion will be entered.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Tuesday, February 18, 2014**
(grs)